# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALSON ALSTON,<br>　　　　　Plaintiff,<br><br>– against –<br><br>CUBESMART,<br><br>DISTRICT MANAGER, PHILA, PA CUBESMART,<br><br>REGIONAL MANAGER, PHILA, PA CUBESMART,<br><br>MARY [UNKNOWN LAST NAME] PHILA, PA CUBESMART,<br><br>VERONICA [UNKNOWN LAST NAME] PHILA, PA CUBESMART,<br><br>STORAGE TREASURES, LLC (dba [www.storagetreasures.com](www.storagetreasures.com)),<br><br>　　　　　Defendants. | Civil Action No.: 2:26-cv-_____ |

**VERIFIED COMPLAINT**

　　　　Plaintiff Alson Alston ("Alston"), pro se, hereby complains of CubeSmart, District Manager of Philadelphia, PA CubeSmart ("District Manager"), Regional Manager of Philadelphia, PA CubeSmart ("Regional Manager"), Mary [Unknown Last Name] of Philadelphia, PA CubeSmart ("Mary"), Veronica [Unknown Last Name] of Philadelphia, PA CubeSmart)("Veronica"), Storage Treasures, LLC dba www.storagetreasures.com ("Storage Treasures"); collectively, "Defendants," as follows:

1

## INTRODUCTION

This action involves Defendant CubeSmart's false advertising violation of Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a);[1] violation of the Truth in Lending Act (TILA or Act), Pub. L. No. 90-321, 82 Stat. 146 (1968) (codified as amended at 15 U.S.C. §§ 1601–1667f) by lending Alston funds for the content insurance, without the required TILA disclosures;[2] CubeSmart's deceptive trade practices under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 to 201-9.3 (the "UTPCPL" or "Consumer Protection Law");[3] violation of the TILA and UTPCPL by lending Alston funds for the rental fees, for which it charged illegal interest in the form of "administrative liens," without the required TILA disclosures and without ever filing a lien with the city, county or state; the illegal sale of Plaintiff's business and personal items by Defendants CubeSmart and Storage Treasures which Plaintiff had stored in unit 542B, 456 N Christopher

---

[1] The false advertising claim is based on CubeSmart's misrepresentation of the characteristics of the insurance requirement for storage units which Alston rented to hold, inter alia, his restaurant and private event space equipment, including the clear statement that the insurance was optional in an Oct. 17, 2022 promotional email, then the automatic attachment of the premiums for the insurance to his invoicing once he rented CubeSmart units after having relied upon the misrepresentations to choose a CubeSmart facility when others were available and did not appear to have a mandatory insurance requirement. See Parks LLC v. Tyson Foods, Inc., 863 F.3d 220, 226 (3d Cir. 2017) (holding that "Subsection (a)(1)(B), forbids 'commercial advertising or promotion' that 'misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]' 15 U.S.C. § 1125(a)(1)(B)."). , whether Alston's existing commercial insurance satisfied the insurance requirement, if any, whether CubeSmart was acting as Alston's insurance broker or producer – with or without an insurance license – the amount of the broker's and/or producer's commission to be received by CubeSmart, if any, whether said insurance should or would be taxed, etc.

[2] The insurance fees were clearly loaned to Alston, as the Nov. 24, 2023 Notice demonstrates, for it requires that unpaid insurance premiums, which had been charged to Alston's account, had to be paid back to CubeSmart or the contract could be deemed breached – even though Alston had informed Cubemart staff that he already had sufficient personal and commercial insurance; CubeSmart provided no disclosure of any sort, when the identity of the creditor, amount financed, finace charge, at minimum were required by TILA. See Krieger v. Bank of Am., N.A., 890 F.3d 429, 432 (3d Cir. 2018):

> TILA generally requires that a creditor in a consumer transaction disclose, among other things: (1) the identity of the creditor; (2) the amount financed; (3) the finance charge; (4) the annual percentage rate; (5) the sum of the amount financed and the finance charge, or total of payments; and (6) the number, amount, and due dates or period of payments scheduled. Creditors also must provide explanations and definitions of each of those terms, id., as well as information regarding borrowers' rights. All of this information, the Act mandates, must be disclosed clearly and conspicuously, that is, in a reasonably understandable form and readily noticeable to the consumer.

Id.

[3] The deceptive trade practices claim is based on CubeSmart's misrepresentation of the characteristics of the insurance requirement for storage units which Alston rented to hold, inter alia, his family heirlooms and personal papers where the rental contract did not state that insurance had to be purchased from CubeSmart, but CubeSmart had instructed its employees to add the fees even if the renter stated that he/she already had sufficient insurance. As well, the emailed Notice of Nov. 24, 2023 included approximately 18 months of added insurance fees for 2 storage units that artificailly inflated the amount due for Unit 542B, pushing it into auction status without legal basis. As well, the actual auction of the contents of unit 542B was a deceptive trade practice because the steps required for an auction under PA law were not followed and the entire auction process engineered by all of the Defendants was designed to cheat the owners of the contents of unit 542B and all others who possessed large units or greater value contents.

Columbus Blvd, Philadelphia, PA 19123 by violating the PA Self-Service Storage Facility Act ("Storage Act") (73 Pa. Stat. §§ 1901-1917, **prior to Jan. 2, 2023 amendments)**; CubeSmart's and Storage Treasures' tortious conversion of Alston's business and personal property stored in unit 542B on or about January 5, 2024, due to their illegal auctioning of those items that day; CubeSmart's and Storage Treasures' negligence and/or breach of an implied contract in allowing Alston's private financial, medical and personal identity records (including social security card, social security number, birth certificate and banking records) to be provided to third-parties, without first having the legal basis to sell those items and without obtaining Alston's consent.

1. The Defendants are engaged in a continuing chain conspiracy against the businesses and consumers of the Commonwealth of Pennsylvania where Defendants utilize false advertising, deceptive trade practices and employee bonus structures to create the conditions for illegally auctioning storage unit contents; sell the contents without the required notice and advertisement and orchestrate a fraudulent online "auction" where the posted minimum bids are adjusted by an automated process that favors the storage facility owners, the pictures posted on the "auction" site do not show the great majority and value of the unit contents, the storage facility owners actually have their bids inserted automatically for contents they improperly deem of particular value, the owners of the unit contents are systematically cheated so that they get far less than market value for the contents of their units; and associates of the storage facility owners get unfair advantages to profit at the expense of the rightful owners of the storage contents.

Plaintiff brings this action against all of the named Defendants to obtain all of his items that were illegally auctioned by the Defendants, compensatory, punitive and other statutory damages. In this matter, we will present the facts below and prove the following by a preponderance of the evidence:

## THE PARTIES

1. Plaintiff Alson Alston is an adult whose address is 4904 Monument Road, City of

Philadelphia, Philadelphia County, PA 19131.

2. Defendant CubeSmart headquartered at 5 Old Lancaster Rd., Malvern, PA 19355, is a publicly-traded corporation that owns the storage facility at 456 N Christopher Columbus Blvd, Philadelphia, PA 19123.

3. Defendants DISTRICT MANAGER, REGIONAL MANAGER, Mary [UNKNOWN LN] and Veronica [UNKNOWN LN] are employees of CubeSmart and participants in the chain conspiracy..

## JURISDICTION

4. Jurisdiction is proper, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because Plaintiff brings causes of action under the Lanham Act, codified at 15 U.S.C. § 1125(a) and the Truth in Lending Act (codified as amended at 15 U.S.C. §§ 1601–1667f) as well as 28 U.S.C. § 1367 (supplemental jurisdiction), which covers claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 to 201-9.3, and Pennsylvania's tort laws and contract enforcement laws.

## VENUE

5. Venue is proper, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## FACTUAL BACKGROUND

6. Plaintiff rented storage unit #542B from CubeSmart at 456 N Christopher Columbus Blvd, Philadelphia, PA 19123 on Oct. 21, 2022 for $343.85/mo (Ex. A).

7. CubeSmart deceptively began billing Plaintiff for insurance at $12/mo, even though he informed them that he had homeowners and business insurance that would cover the fees. They insisted that he could not rent the unit unless he also obtained insurance through them, which is a false and deceptive trade practice.

8. CubeSmart billed Plaintiff for tax on the improperly assessed insurance, in violation of PA law.

9. If not for the excess insurance and tax improperly added to Plaintiffs storage units, his unit 542B would not have been subject to an auction.

10. In or about October 2022, Plaintiff overheard a conference call during which District and Regional Management at CubeSmart exhorted workers, in a pep rally-like atmosphere, to auction as many units asw possible, as quickly as possible and that this was a huge win for the company. There was no mention of having to follow the law.

11. In December 2023, Veronica made repeated, harassing collection phone calls to Plaintiff demanding payment, even though he informed her that she was calling a business line and that his company did not allow personal collection calls during working hours.

12. On Nov. 28, 2023, Plaintiff paid the rent due for another storage unit #541B online, but CubeSmart, in an attempt to force an auction, refused to accept his payment for #542B, even though unit #541B was less current in its payments than was unit #542B.

13. On Nov. 24, 2023, CubeSmart emailed Plaintiff a notice (Ex. 3), in violation of the Storage Act demanding payment for unit #542B in less than 30 days or the contents would be advertised for sale and auctioned.

14. CubeSmart never provided proof of when and in what publication the first and second ads were placed, but in an earlier discussion with Mary, she indicated that their policy was only to advertise once, pursuant to "the new" Storage Act.

15. Mary failed to distinguish between the applicability of the 2023 amendments to leases signed prior to Jan. 2, 2023, which is the type of lease Plaintiff has.

16. The Storage Act in force for Plaintiff's lease is the prior Storage Act, which requires that the storage facility must advertise the sale in a newspaper of general circulation twice "preceding the date of sale" listed in the ad and that the sale take place "no sooner than ten days after the first publication."

17. Upon information and belief, including a conversation with Mary on Jan. 5, 2024, Mary orchestrated a single ad in a newspaper, then rushed to sell the contents of Plaintiff's unit #542B, in

clear violation of the applicable Storage Act.

18. Storage Treasures handled the auction using a host of deceptive means that guaranteed that CubeSmart would profit and that Plaintiff would suffer heavy losses, inviolation of the UTPCPL.

19. Plaintiff paid the amount due online, that the CubeSmart system stated wasw accurate on Jan. 5, 2024, $343.04.

20. When he called Mary to inquire whether this satisfied all of the debt, she informed him that the contents of his unit #542B had been sold the day before and that, variously, the unit had been cleared out, the unit moight not have been cleared out, the account was closed, the account had not been closed, …. She agreed to inform the District and Regional Manager that I had made a payment and that I am disputing the legality of the advertising of the sale and that I wanted to pay whatever else was required to prevent an illegal auction or reverse any auction that had taken place, since storage facilities state they have that right in all notices.

21. Plaintiff has never heard from Mary or anyone else as to the ultimate disposition of the contents of his unit #542B.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(A)

22. All prior paragraphs are incorporated herein for reference.

23. Defendants misrepresented insurance requirements, escalating billing and undisclosed fees in their advertisements, used deceptive advertising and misleading counters, registration and other fraudulent means before, during and after the auction to ensnare and deprive Plaintiff of his personal possessions in violation of Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a).

24. WHEREFORE, PLAINTIFF REQUESTS THAT THE Court award him the following relief:

   a. Compensatory damages, for the replacement value of his business items auctioned, which he believes is approximately $85,000;

   b. Return of all of his business papers, personal papers and family heirlooms improperly auctioned;;

   c. Punitive damages, as deemed appropriate by the Court;

   d. Plaintiff's court costs and legal fees; and

   e. Such other relief as may be appropriate.

## COUNT II
## VIOLATION OF THE TRUTH IN LENDING ACT, 15 U.S.C. §§ 1601–1667F

25. Paragraphs 1 thru 46 are incorporated by reference herein.

26. Defendants violated of the Truth in Lending Act (TILA or Act), Pub. L. No. 90-321, 82 Stat. 146 (1968) (codified as amended at 15 U.S.C. §§ 1601–1667f) by lending Alston funds for the content insurance, without the required TILA disclosures, causing confusion and past due balances leading to the conversion of his personal items by Defendants.

27. WHEREFORE, PLAINTIFF REQUESTS THAT THE Court award him the following relief:

   a. Compensatory damages, for the replacement value of his business items auctioned, which he believes is approximately $85,000;

   b. Return of all of his business papers, personal papers and family heirlooms improperly auctioned;;

   c. Punitive damages, as deemed appropriate by the Court;

   d. Plaintiff's court costs and legal fees; and

   e. Such other relief as may be appropriate. .

## COUNT III
## BREACH OF CONTRACT

28. All prior paragraphs are incorporated herein for reference.

29. Plaintiff rented unit #542B with the expectation that CubeSmart would follow the applicable laws, notice and advertising requirements at all times, but they failed to do this and that failure resulted in the illegal auction of his business and personal items on or about Jan. 5, 2024.

30. Despite paying the amount the system told him that he owed on Jan. 5, 2024, Mary informed him, among other attestations, that he would not be able to recover his items.

31. WHEREFORE, PLAINTIFF REQUESTS THAT THE Court award him the following relief:

   a. Compensatory damages, for the replacement value of his business items auctioned, which he believes is approximately $85,000.

   b. Return of all of his personal papers and family heirlooms improperly auctioned;

   c. Punitive damages, as deemed appropriate by the Court;

   d. Plaintiff's court costs and legal fees; and

   e. Such other relief as may be appropriate.

## COUNT IV – DECEPTIVE TRADE PRACTICES, INCLUDING FRAUD

32. All prior paragraphs are incorporated herein for reference.

33. CubeSmart sent improper notices to Plaintiff demanding payment in less than the 30 days required by the Storage Act, failed to advertise the sale twice in a newspaper of general circulation, lied to him about whether he could retrieve his items on Jan. 5, 2024 when he could infer from Mary's evasive responses that the contents had not yet been removed from the unit.

34. Deceptive trade practices are violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 to 201-9.3 (the "UTPCPL" or "Consumer Protection Law").

35. Plaintiff specifically alleges that the above misrepresentations and failure to act in compliance with the Storage Act are deceptive trade practices, as defined by the UTPCPL. UTPCPL § 201-2(xxi) ("'[U]nfair or deceptive acts or practices' mean any one or more of the following: … (i) … Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.") and § 201-3 (" Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) … are hereby declared unlawful.").

36. Note that the PA Supreme Court expanded the applicability standard of the catchall provision of the UTPCPL (§ 201-2(xxi) – "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding") into one of strict liability, making it unnecessary to prove the intent required by the prior common-law fraud standard:

> … we are bound to conclude again that the plain language of the amended provision eliminates the state of mind element that was required prior to the amendment. The plain language of the current statute imposes liability on commercial vendors who engage in conduct that has the potential to deceive and which creates a likelihood of confusion or misunderstanding. That is all that is required. The legislature required neither carelessness nor intent when a cause of action is premised upon deceptive conduct.

Gregg v. Ameriprise Fin., Inc., 245 A.3d 637 (Pa. 2021).

37. The Defendants' collective fraud and other deceptive trade practices deprived Plaintiff of his business and personal property, including items that cannot be replaced.

38. WHEREFORE, PLAINTIFF REQUESTS THAT THE Court award him the following relief:

    a. Compensatory damages, for the replacement value of his business items auctioned, which he believes is approximately $85,000.

    b. Return of all of his personal papers and family heirlooms improperly auctioned;

    c. Punitive damages, as deemed appropriate by the Court;

    d. Plaintiff's court costs and legal fees; and

  e. Such other relief as may be appropriate.

## COUNT V – VIOLATION OF THE STORAGE ACT IN FURTHERANCE OF A CHAIN CONSPIRACY AND STATE RICO CHARGE

39. All prior paragraphs are incorporated herein for reference.

40. CubeSmart and Storage Treasures violated the Storage Act by inadequate and improper advertising of the sale of Plaintiff's unit #542B, then calling the fraudulent, one-sided gift to CubeSmart that apparently occurred on Jan. 4, 2024 an auction.

41. The Defendants' collective violation of the Storage Act through fraud and other deceptive trade practices deprived Plaintiff of his business and personal property, including items that cannot be replaced.

42. WHEREFORE, PLAINTIFF REQUESTS THAT THE Court award him the following relief:

  a. Compensatory damages, for the replacement value of his business items auctioned, which he believes is approximately $85,000.

  b. Return of all of his personal papers and family heirlooms improperly auctioned;

  c. Punitive damages, as deemed appropriate by the Court;

  d. Plaintiff's court costs and legal fees; and

  e. Such other relief as may be appropriate.

**I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.**

Dated: January 5, 2026   /s/ Alson Alston
            Alston Alston
            4904 Monument Road
            Philadelphia, PA 19131